```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

Father Doe and Mother Doe as
Parents and next friends of
John Doe

    v.                                        Civil No. 16-cv-396-JL
                                                Opinion No. 2016 DNH 181

Phillips Exeter Academy


**MEMORANDUM ORDER**

Resolution of Phillips Exeter Academy's motion for a protective order turns on whether reports prepared by an investigator hired by PEA's outside counsel enjoy the protection of the attorney-client privilege and, if so, whether PEA has waived that protection. Concluding that the reports are likely not privileged and that, even if they are, PEA waived the privilege by putting the communications at issue in this litigation and disclosing their contents, the court denies PEA's motion.

I. **Background**

In February, two minor students at PEA engaged in a sexual encounter. One of them -- Jane Roe[1] -- later reported the

---

[1] The parties have variously designated the female student "Jane Doe" and "Jane Roe" in their filings in this action. In order to avoid any confusion with plaintiffs' family -- John Doe, Father Doe, and Mother Doe -- the court employs the pseudonym "Jane Roe."

encounter to a counselor, describing it as "uncomfortable" and possibly a sexual assault. PEA administrators, upon learning of this report, contacted their retained outside counsel who, in turn, retained attorney Kai McGintee of Bernstein Shur as an "independent investigator . . . to perform an investigation into the complaint." Second Mischke Decl. (document no. 25-1) ¶ 4. Attorney McGintee was not retained by PEA itself. Id. ¶ 5.

Attorney McGintee reviewed documents, interviewed witnesses -- including John Doe, Jane Roe, and one other student -- and issued two reports to PEA and its outside counsel, recounting her findings and conclusions. First Mischke Decl. (document no. 16-4) ¶¶ 15-19. PEA placed John on Dean's Leave for the spring 2016 trimester and, ultimately, requested that he withdraw from the school. PEA cited Attorney McGintee's findings and her reports as, at least in part, the basis for its decision to do so.[2]

## II. Analysis

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is

---

[2] The court understands that Attorney McGintee prepared two reports -- one in March 2015, after her initial interviews with the students, and a supplemental report over the summer, after John Doe provided additional information about the encounter. PEA does not argue that the reports should be treated differently from one another, and so the court addresses them together.

relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). The plaintiffs have requested that the defendants produce Attorney McGintee's reports. The defendant here seeks a protective order, see id. Rule 26(c)(1), to the effect that it need not produce the reports on grounds that they contain communications protected by the attorney-client privilege.

That "most venerable of the safeguards afforded to confidential communications" attaches only:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in [her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 71 (1st Cir. 2011) (quoting Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002)).[3] The defendant, as the party asserting the privilege and seeking the protective order, "bears the burden of

---

[3]Noting the court's federal question jurisdiction in light of plaintiffs' Title IX claim, the parties have briefed the questions of privilege raised in defendant's motion under federal law. See Mot. for Protective Order (document no. 25) at 5; Obj. to Mot. for Protective Order (document no. 30) at 6 n. 4. The court invokes the same. See Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011) ("When the parties agree on the substantive law that should govern, 'we may hold the parties to their plausible choice of law, whether or not that choice is correct.'" (quoting Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010))).

establishing that [privilege] applies to the communications at issue and that it has not been waived." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).  PEA has not done so.

A. **Attorney-client privilege**

The plaintiffs argue, as a threshold matter, that the reports do not enjoy the protection of the attorney-client communication privilege at all because PEA lacked an attorney-client relationship with Attorney McGintee and that the reports do not amount to legal advice.  See Obj. to Mot. for Protective Order (document no. 30) at 7.  PEA contends that Attorney McGintee communicated her reports to PEA and its outside counsel as an agent of the latter and, thus, that her communications come under the umbrella of PEA's attorney-client relationship with its outside counsel.  More specifically, defendants explain that PEA's outside counsel commissioned Attorney McGintee's reports "for the purpose of providing legal advice related to the school's handling of this student sexual misconduct matter." Mot. for Protective Order (document no. 25) at 4.  PEA's own statements concerning the purpose of Attorney McGintee's investigation, however, as well as its description of her as an "independent investigator," suggest otherwise.

4

The First Circuit Court of Appeals has acknowledged the "possible extension of the privilege when a third party helps the lawyer give legal advice." Lluberes, 663 F.3d at 24. Here, PEA contends that McGintee served as such a third party. Whether the privilege extends to her communications with PEA or its outside counsel

> involves considering the source and nature of the information contained in the documents. If the communication contains only client confidences made in pursuit of legal advice -- or legal advice based on such client confidences -- that communication, if intended to remain confidential, should be covered by the privilege, regardless of whether it came from the client, his attorney, or an agent of either one. If, however, the transmitted information consists largely of facts acquired from non-client sources, those facts are not privileged.

Id. at 24-25. The source and nature of the information contained in Attorney McGintee's reports, as described by both parties, strongly suggest that Attorney McGintee's reports fall into the latter category. As PEA has described the reports, they consist of Attorney McGintee's "factual findings," as to what occurred between John and Jane, "including credibility determinations in instances where there were disputes of fact." First Mischke Decl. (document no. 16-4) ¶ 18. This suggests that the reports consist largely of facts acquired from the three minor witnesses. Facts and statements by third parties do not enjoy the protection of the attorney-client privilege. See Lluberes, 663 F.3d at 25.

5

There is also a question as to whether Attorney McGintee's reports amount to the provision of legal advice. PEA's representations to the Doe plaintiffs and to this court suggest that any advice provided in the reports advice is more akin to advice rendered to assist in a business decision, which the privilege does not protect, than legal advice, which it does. See Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995) ("The attorney-client privilege attaches only when the attorney acts in that capacity."). Cf. U.S. ex rel. Hamrick v. GlaxoSmithKline LLC, 814 F.3d 10, 17 (1st Cir. 2016) (nature of business decision at issue may blur the line between business advice and legal advice). PEA has described its process for handling cases of sexual misconduct as follows:

> In the reasonable exercise of its reserved discretion, [PEA] has determined that the better process in [cases such as this] is to employ an external investigator to perform an independent investigation and issue a report with factual findings and conclusions on whether a PEA policy has been violated. The investigator applies a preponderance of the evidence standard. The Dean of Students and her team review the report and make a recommendation to the Principal, who makes the final determination on an appropriate disposition, which is precisely how this case proceeded.

Obj. to Mot. for Prelim. Inj. (document no. 16) at 10-11; see also MacFarlane Decl. (document no. 16-1) ¶ 8; First Mischke Decl. (document no. 16-4) ¶ 14. As it has been described to the

plaintiffs and the court, Attorney McGintee's reports include facts drawn from interviews with three minors who are not party to the attorney-client relationship, as well as Attorney McGintee's conclusions as to their credibility and her ultimate conclusion as to what happened during the encounter between John Doe and Jane Roe.  See First Mischke Decl. (document no. 16-4) ¶¶ 15-19.  PEA, by its own admission, and as discussed more fully infra Part III.B, used this information to form its decision on whether to suspend or expel John Doe.  Advice to a school on whether to discipline a student seems, to this court, to more closely resemble communications to facilitate a business decision than pursuit of legal advice.

    Finally, PEA's Dean Mischke has consistently described Attorney McGintee as an "independent investigator" or an "external investigator" in her communications with the Does and her statements in this court.  See First Mischke Decl. (document no. 16-4) ¶¶ 12, 14; Second Mischke Decl. (document no. 25-1) ¶ 4.  It seems difficult to reconcile such a description with the argument that Attorney McGintee -- the reports of that "independent" or "external" investigator -- acted as an agent of PEA's counsel made for the purposes of obtaining or providing legal advice to PEA.  To the contrary, by describing Attorney McGintee as "independent," PEA appears to signal that Attorney McGintee was not acting as its outside counsel's agent.

Bearing in mind the admonition that "the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth," In re Keeper of Records, 348 F.3d at 22, the court is disinclined to conclude that the reports enjoyed the privilege's protection on this record. But even assuming that Attorney McGintee was employed to help PEA's outside counsel render legal advice, that she prepared and submitted the reports for the purpose of providing legal advice, see Cavallaro, 284 F.3d at 248, and that the reports were privileged at some point, as discussed below, PEA has waived that protection.

**B.   Waiver**

The protection afforded to communications between clients and their attorneys "ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party. The rationale is that such disclosure destroys the confidentiality upon which the privilege is premised." Lluberes, 663 F.3d at 24 (internal quotations and citations omitted). Waiver can be express or implied. In the manifest absence of any express waiver, the plaintiffs argue that PEA waived the privilege by implication. See Obj. to Mot. for Protective Order (document no. 30) at 11. "Claims of implied waiver must be evaluated in light of principles of logic and

fairness. That evaluation demands a fastidious sifting of the facts and a careful weighing of the circumstances." In re Keeper of Records, 348 F.3d at 23 (internal citations omitted). PEA bears the burden of demonstrating that it has not waived the privilege. Id. at 22.

After weighing the facts and circumstances of this case, the court concludes that PEA has waived any privilege that may have attached to Attorney McGintee's reports. First, a party who puts the subject matter of attorney-client communications at issue in litigation waives the privilege by implication. Id. (quoting 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.41[1] (Joseph M. McLaughlin ed. 1997)). PEA has done so here by asserting its reliance on the reports as, at least in part, its basis for disciplining John Doe. According to Dean Mischke, PEA placed John on Dean's Leave based, at least in part, "on the findings of the investigation" and PEA's review thereof.[4] Amended Compl. Ex. D (27-4) at 1. Upon receiving the deans' recommendations, Principal MacFarlane "determined that it would be in the best interest of all parties

---

[4]Indeed, PEA itself proposed that the court find that "the deans recommended to Principal MacFarlane that John Doe not be allowed to return to PEA" at least in part "based on . . . Ms. McGintee's findings" and John Doe's admissions to Attorney McGintee. See Def. Proposed Findings of Fact and Conclusions of Law (document no. 17) ¶ 47.

9

involved for John Doe to be withdrawn from PEA" after reviewing, and on the basis of, among other considerations, Attorney McGintee's reports.  Id. ¶¶ 49-50; see also MacFarlane Decl. (document no. 16-1) ¶¶ 11, 18.  The reports are thus, if not central, certainly relevant to one of the issues raised in this litigation:  whether PEA violated a contractual agreement through its decision-making process with respect to John Doe's discipline.  Having injected the reports' contents into the litigation, PEA waived the privilege.  In re Keeper of Records, 348 F.3d at 24.  And because this waiver involves "a disclosure made in the course of a judicial proceeding," it extends to the subject matter of the reports, not merely the documents themselves.  Id.

Even had PEA not put the reports into issue in this litigation, PEA waived any privilege by disclosing their contents to third parties -- specifically, the Does -- and in filings with this court.  In re Keeper of Records, 348 F.3d at 22 ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised.").  Dean Mischke disclosed portions of the reports to John Doe's parents before this litigation began.  On March 3, 2016, Dean Mischke emailed Father Doe to set up a phone call "to review the general findings of Ms. McGintee's investigation . . . ."  Amended Compl. Ex. B

10

(document no. 27-2).  Not "want[ing] to be cagey about the conclusion" of Attorney McGintee's report, Dean Mischke disclosed Attorney McGintee's conclusion that "while she has concerns about [John Doe], his attitude and his lack of reading the situation as well as not obtaining expressed consent early on, concludes no malice and no forcible action."  Id.  During the ensuing phone call, plaintiffs allege, Dean Mischke also disclosed certain of Jane's allegations.  Amended Compl. (document no. 27) ¶ 44.  PEA further described the reports' contents -- including Attorney McGintee's conclusions -- in several filings with this court, including Dean Mischke's declaration and its proposed findings of fact and conclusions of law filed in advance of a subsequently-cancelled hearing on the plaintiffs' motion for a preliminary injunction.  See First Mischke Decl. (document no. 16-4) ¶¶ 18-19, 26; Defendant's Proposed Findings of Fact and Conclusions of Law (document no. 17) ¶¶ 33-34.

### III. Conclusion

Defendant PEA has not borne its burden of demonstrating that the reports prepared by Attorney McGintee, an independent investigator, enjoy the protections of the attorney-client privilege.  Even had it done so, the court finds that PEA waived that privilege by placing the content of the reports at issue in

this litigation and through disclosure to third parties.

Accordingly, PEA's motion for a protective order[5] is DENIED.[6]

**SO ORDERED.**

_/s/ Joseph N. Laplante_
Joseph N. Laplante
United States District Judge

Dated:   October 13, 2016

cc:  Max D. Stern, Esq.
     Megan C. Deluhery, Esq.
     Samantha Dowd Elliott, Esq.
     W. Daniel Deane, Esq.
     Steven M. Richard, Esq.
     Joel Rosen, Esq.
     Stephen J. Judge, Esq.

---

[5] Document no. 25.

[6] Upon learning that PEA must disclose the reports in discovery, Jane Roe's father requested an opportunity for his objection to the disclosure to be heard. The court held a conference on October 11, 2016, attended by counsel for all parties and for the Roes. The court understands that a stipulation covering treatment of Jane Roe's statements in publicly filed documents is forthcoming.